Good morning, Your Honors. I'm Sarah Courageous, and I'm representing the defendant, or the presented in the opening brief. What I would like, how I would like to use my time this morning is really to focus on the arguments that have been put forth by the government. The initial argument, and sort of an overriding argument that the government made was that the jury instructions in this case were adequate, they were not misleading, they were not erroneous, and excuse me, I meant to mention to the court that it's not already aware that this case involves a gambling offense, a conspiracy, and also multiple money laundering offenses. So with respect to the government's argument that the court, the government also indicated that the judge was not required to use the word voluntarily in order to define knowingly. The defense counsel had wanted knowingly to, for the judge to use the word voluntarily instead of knowingly, and this was in part because of the defense that he was presenting, that the defendant lacked the intent to commit the crimes, the knowing intent. The difficulty I've got with that is that she got the duress instruction to the extent that the district court deemed it appropriate. That is on the counts to which it was applicable. So I've never heard of defining knowingly differently just because there's a duress defense. Well, I think that there were actually two defense theories here, not one, and that these theories were in some respects similar, but they really were different. The duress defense really ended up applying only to certain money laundering charges. And I also say that with respect to the duress, that that certainly entails some sense or some element of compulsion by threat, whereas the other defense, which was a lack of intent, it was a lack of a certain mental element, and that part of that lack of knowing of the act of knowing or knowing of her actions included this aspect of voluntariness. And so really they were not alike, and also... I can get it if you're talking about, you know, well, gee whiz, she was drunk or something at the time she did something, therefore she didn't really know she was doing it. But I have a hard time understanding the concept in connection with keeping books, making financial transactions, and whatever. I mean, she did what she did, and the district court instructed that she had to have the requisite intent for money laundering. So what else is there? Well, it all started really with the indictment, because the indictment charged the defendant in count one with, I believe it was knowingly and... of willfully and knowingly committing the offense. The willfully part was gratuitous. Well, I would argue that it wasn't gratuitous, and that in fact that knowingly wasn't gratuitous, although both of those words, those terms, intents, were deleted from the jury instructions. But also knowingly was used with respect to all of the money laundering charges, and also with respect to the conspiracy. And the defense counsel relied on the fact that there was this intent that was set out in the indictment, and that this word knowingly, I think, had to presuppose that a voluntariness was a part of this knowingly intent. So I think that's where the argument came from, but the fact is that the defense theory based on knowingly being voluntary went across all of the offenses that were charged, and not just certain of the money laundering offenses. The government has argued also that the jury instructions track the model Ninth Circuit instructions, and so that was sufficient. And I think that even though they did track the Ninth Circuit instructions, still they were not adequate, because they really didn't adequately cover this defense theory. The government has also argued that the count one gambling offense is a general intent crime, so knowingly did not have to be included in the charge, and the government made the same argument also for willfulness. And this really leads into the constructive amendment argument that I have made, that in this case, by deleting both of these terms, from the jury instructions, the court actually broadened the offense that was being charged. It may be that the count one gambling offense may have been statutorily a general intent crime, but when the grand jury narrowed it to include willful and knowing, then that should have been respected in the jury instructions. And particularly so, because in this case, the defense counsel was actually relying on that narrow construction to present his defense theory of lack of intent. The government has also stated that the use of the conjunctive word and in the gambling offense charge, and then the use of the disjunctive word or in the jury instruction, really was legally permissible. And I do concede that that is the law. However, what I ask the court to do is to take a look at the bigger picture here, which is that there were a lot of variances in the indictment and in the jury instructions. And when we look at all of them, then this particular interchange or variance can't be, I don't think can be deemed to be permissible. The government has argued that the money laundering instructions were accurate statements of the law. And this was in answer to my claim that these instructions were not proper, because there were instructions as to the legal elements of the offenses, but these instructions were not proper. They were never tied into the transactions. And we're talking about 45, I think, or I think it's about 48 money laundering statutes. So the actual instructions that were given, there were four of them. Three of them set out the legal elements of money laundering, and then there was a fourth one, which just briefly instructed the jury to consider the evidence with respect to the offenses. And what bothers me here is I think that if this had been, for example, a one-count indictment or a two-count indictment, there's no doubt but that the court would have included in the jury instructions, in the instruction, the particular action or the acts of the defendant or the transaction involved. And I'm just wondering if it wasn't just a matter of expediency that here we have 48 counts, all money laundering, and so it just became much easier to simply not to deal with any of defendants' specific acts, even though these, just the fact that there happen to be multiple counts doesn't, I don't think, permits, I mean, they should be, they're all separate individual offenses. And the instructions should be set out in a way to make it very clear what the offenses are and what the... I mean, when the jury has got the indictment in front of it, and the instructions say to treat each count separately, isn't that sufficient? I don't think it's sufficient, and I think there is law to support the proposition that just because the jury has a record to use in making a finding of guilt, that this does not relieve a court of its responsibility to deal with the offense. I think it's important to give clear instructions on both the law and also the facts, and that this was not done. The government has also argued that the defendant failed to object to these missing facts in the instructions, and that, therefore, a plain error analysis is appropriate here. I think that because of what was done, that actually this was constitutionally impermissible, and therefore, it should be reversible per se. But if we did have to apply a plain error analysis, which I don't think I'm going to have time to do at this point, I think that one could be applied. And I'm sorry. For some reason, I thought my time was just about up. Apparently, it isn't. You have plenty of time, but I think we understand where you would be going with it anyway. Okay. Thank you. I think, really, in terms of my... That's all that I would have to say. Regarding my analysis of the constructive amendment argument and also the erroneous jury instructions, there was one other argument that I made, and it regarded the upward adjustment for obstruction of justice. As the brief showed, there were... I think that there were just... There were a lot of admissions by the jury. There were a lot of admissions by the defendant as to her conduct. However, the government points out that the judge found that her... that basically what was not plausible was her duress defense. And then there also happened to be some cross-examination and, I guess, impeachment on some 1988 receipts. Although I point out that the offenses charged in this case were from 1994 through 1997. And I had a hard time finding how those receipts would be relevant or material. I don't think that the judge made a finding of willful obstruction. If they say it was blatant, doesn't that more or less say the same thing? Well, I guess blatant to me would be obvious, but willful would imply, again, a certain intent on the defendant's part, so I'm not sure that they are the same. And where there is a question of that sort, I think that the court ought to take the more conservative view in favor of the defendant. If the judge did not make a willfulness finding of obstruction, then, of course, the government has not satisfied its burden of the preponderance of evidence. And I'll reserve the rest of my time for rebuttal. Thank you, Your Honor. Beverly Lee Samashimo on behalf of the United States. I'll take the obstruction argument first, since that was her last argument, but I think the court can see that the record is replete with the district judge's findings that at every turn of the defense, the defendant's only defense in this case, and that was she only did the acts which she knew were wrong because she was coerced by her husband. And the judge made numerous findings throughout the case, and including in the sentencing hearing, where he found that she simply was not believable. He enumerated the reasons why, and he was a judge that presided over the approximately two-and-a-half-week trial, finding that because this woman had conducted these money laundering transactions for a period of over nine years, and the record is clear that, actually, by her own testimony, it began in 1989 and it continued until 1998. In fact, it was in 1997 that she began to claim that her husband also coerced her children, which led the court to give the limited duress instruction over our strenuous objection with respect to those counts that only related to after 1997. So we're talking about a nine-year period where she is going on an almost daily basis to the bank, making the deposits of the gambling proceeds, cashing the checks to settle the wins and losses, and this is going on almost every week or almost daily for a nine-year period during the gambling season. The judge found that her testimony that the husband coerced her to do this when it was on a sustained basis, when she was a strong, assertive woman, someone who had interfaced with the police, the mayor's office, and knew how to assert herself that her defense that it was her husband who forced her to do all this was simply not believable. And we've cited in our brief, and in particular, these supplemental excerpts of records at 270 to 277 where the judge goes on for quite a bit of time where he talks about what she did which made her defense totally unbelievable. Well, that certainly goes to falsity, but I think the argument here is that the finding of willful intent was not adequately stated by the district judge. So what's the best part of what the judge said that you think shows a finding on that point? Well, the judge said that she could have done a number of things to report that this was happening, and she didn't do so. She had every opportunity to escape her husband, and she did not do so. She knew that what she was doing was wrong. On cross-examination, I took her through every single money laundering act that she did, and she said that, yes, she knew that she had done it, but that was wrong. The judge also focused on a finding with respect to a particular receipt which the government offered as an exhibit, and that was a receipt book which she admitted was in her own handwriting in which she made receipts for gambling debts beginning in 1988. Now, on direct examination, she said that she had not even, her husband had not even begun to force her in being involved in the gambling operation until 1990. So that was an important material point as to why she was at a place she was at where she had left him about 15 years ago and then got back to him two years before allegedly he got her involved in the gambling business. But this receipt book showed that she actually was involved in it in 1988, right after she got involved, and that showed that she basically had a specific area where she was giving a falsehood here. How do you read the court's comment that said, in response to counsel's comment, Judge Edgeworth said, she may have been candid, but she wasn't truthful? Well, I think, Your Honor, I think he was trying to let the court know, yes, that he was sympathetic to any kind of spousal abuse defense, although the battered wife syndrome was not a defense. I mean, the defendant said that she could not put on any expert testimony as to that, and I think the judge wanted to make clear that while he was sympathetic to that defense, the evidence in this case certainly did not support that, and that, you know, it's something that you have to look at. But he did not have to put on through either expert testimony, and that what she put on was just not believable in terms of that she was even coerced. So I think he was trying to give her her due, but at the same time, he made a finding that she wasn't believable. The jury didn't believe her, and neither did he. Well, that's what bothers me about this case. If he doesn't have to make a finding of willful perjury or something like that, but he just says, I don't believe her, doesn't this prove that she's not a suspect? I mean, he could put a chilling effect on a witness taking the stand and telling her version of the facts and running the risk that the jury or the trial judge won't believe her, but she's not, I think, where I'm having trouble when there's no finding of willful falsity or perjury. It's just simple disbelief. I think the two-level adjustment was actually less than that. I mean, she'd be out now on time served if she hadn't had that kick for obstruction. Well, the other irony about this, Your Honors, is that the court knows that the money laundering guidelines were changed, and it just so happened this defendant was sentenced after that took effect. So actually, her original guidelines were many years higher, and she actually got the benefit of the change in the guidelines. She also forfeited her property, didn't she? Yes, Your Honor, she did. She's been punished quite a bit. I guess if I could summarize your answer, that the district judge's acknowledgement and finding of the extent of her involvement and her false testimony about why she did it indicates it would have had to have been willful for her to say what she did. That's correct, Your Honor. And I think the court also noted that she did not accept responsibility. She did not get the credit for that, and that is tied in, of course, to whether there was an obstruction of justice, which we had also argued as part of the sentencing hearing. Now I can move on to the other areas if the court would like, but I think that the case law that we cited makes it very clear that these are the complaints about a variance in the indictment, the charging in the conjunctive, but the proving in the disjunctive, et cetera, is pretty well established and that there really isn't a basis for reversal based on those grounds. Do you have any questions? No. Okay, I think we're good. Thank you. Thank you. All right. Thank you. Thanks for your argument. The matter just argued will be submitted. Thank you. Thank you. Thank you. Thank you. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye. Aye.   Aye. Aye.
judges: Goodwin, Rymer, T.G. Nelson